**IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| MIRZA N. BAIG, and BLUE SPRINGS WATER CO., | ) ) ) | FILED: JULY 24, 2008 08CV4206 |
| Plaintiffs, | ) ) | No.: JUDGE GETTLEMAN MAGISTRATE JUDGE DENLOW EDA |
| v. | ) ) | Judge: |
| THE COCA-COLA COMPANY, | ) ) | |
| Defendant. | ) ) | Plaintiff Demands Trial By Jury |

## <u>COMPLAINT</u>

NOW COME the plaintiffs, MIRZA N. BAIG and BLUES SPRINGS WATER CO., an Illinois Corporation (referred to collectively as "Baig"), by their attorneys, DAVID J. KIESLER & ASSOCIATES, LLC, and complaining of defendant, THE COCA-COLA COMPANY ("Coca-Cola"), state as follows:

## <u>General Allegations</u>

1.      At all relevant times, plaintiff, Baig, has been a resident of Chicago, Illinois, and is the president and sole shareholder of plaintiff, BLUES SPRINGS WATER CO. ("Blue Springs"), an Illinois Corporation having its principal place of business in Chicago, Illinois.

2.      At all relevant times, defendant, Coca-Cola, has been a Delaware Corporation having its principal place of business in Atlanta, Georgia. Coca-Cola

is in the business of, *inter alia*, manufacturing, distributing and selling a variety of soft drink products in the United States, Canada and worldwide.

3.　　Federal question jurisdiction for Count I arises under the Lanham Act, 15 U.S.C. §§ 1051 - 1129, and specifically under 15 U.S.C. § 1121, and under 28 U.S.C §§ 1331 and 1338. Diversity jurisdiction for Count II exists under 28 U.S.C. § 1332(a) and is based on the fact that Baig and Coca-Cola are citizens of different States, and the value of the matters in controversy exceeds $75,000, exclusive of interest and costs.

4.　　At all relevant times, Coca-Cola has been doing business in the State of Illinois and in the Northern District of Illinois of the United States District Court. Venue is therefore proper in this judicial district pursuant to 28 U.S.C. §1391(b).

5.　　In the spring of 1998, Baig commenced manufacturing, distributing, marketing, advertising and selling a brand of Canadian bottled spring water, under the name and trademark "Naturally Zero," throughout the greater Chicago land area including the City of Chicago and its surrounding suburbs, downstate Illinois, Southern Wisconsin and Northwestern Indiana. By virtue of Baig's continued use, advertising, and promotion, his "Naturally Zero" name and mark became and still are distinctive, well-recognized, and famous, possess a strong secondary meaning, and represent an extremely valuable goodwill. A photograph

of specimens of Baig's Canadian bottled spring water, bearing the mark "Naturally Zero," is attached as Exhibit "A."

6.     As part of Baig's marketing plan designed to emphasize the purity and clean taste of his Canadian spring water, Baig developed several similar taglines or slogans, including: "A drink about nothing," "There's nothing better than absolutely nothing" and "Could you ask for anything less?", which he used in written marketing material, press releases and by word of mouth. True and correct copies of a sampling of Baig's press releases and marketing literature is attached hereto as Group Exhibit "B."

7.     At all relevant times, Baig hired and collaborated with The Beverage Network, a beverage marketing and distribution firm, and its president, Russell Hopkins, to promote "Naturally Zero" and expand its sales volume and increase its geographic market. Baig's ultimate business goal was to continue expanding his regional sales area throughout the Midwest and to sell his company and trademark rights in "Naturally Zero" to a large beverage manufacturer or national retailer.

8.     In the spring of 1999, as a result of Baig's marketing efforts and the growing success and public awareness of his product, "Naturally Zero" appeared in several beverage trade journal magazines. In March, 1999, Baig's "Naturally

Zero" Canadian bottled spring water was written up in *Beverage Industry* magazine:

> "Total Zero. The Beverage Network, Chicago, is representing new bottled water called Naturally Zero Spring Water: The product's name lets its content speak for itself – zero calories, zero carbonation, etc. Naturally Zero is a Canadian water product. For more information, call 847/673-4614" A true and correct copy of the 3/99 *Beverage Industry* article is attached hereto as Exhibit "C."

9.      In the spring of 1999, Coca-Cola launched a brand of purified bottled water it named and trademarked "Dasani." In the same March, 1999, volume of *Beverage Industry* magazine, an article about Coca-Cola's launch of its Dasani purified water was located on the same page and immediately next to the article about Baig's "Naturally Zero" brand spring water. Upon information and belief, executives and management of Coca-Cola read the article about "Naturally Zero" which was unavoidably next to the "Dasani" article. As a result, Coca-Cola had actual knowledge of Baig's bottled water and his trademark, "Naturally Zero," as early as March, 1999.

10.      In December, 2002, Hopkins, on behalf of Baig, had a phone conference with Coca-Cola's then-president of its North American operations (U.S. and Canada), Jeffrey Dunn ("Dunn"), for the purpose of discussing the possible sale of Baig's business, and intellectual property trademark rights in "Naturally Zero," to Coca-Cola.  At the end of their phone conference, Dunn told Hopkins that he (Dunn) was very interested in Baig's "Naturally Zero" spring

water product and asked Hopkins to send Dunn product information and literature on "Naturally Zero."

11.    On January 12, 2003, Baig, based on Dunn's request to Hopkins, sent Dunn a letter about "Naturally Zero" and described his product's new and unique features, including its eye-catching label design. Baig also enclosed three articles about "Naturally Zero" appearing in the beverage trade journals *Beverage Industry*, *Soft Drink International* and *Beverage World*. A copy of Baig's 1/12/03 letter to Dunn, and the attached trade journal articles referenced therein, are attached hereto as Group Exhibit "D."

12.    Shortly after January 12, 2003, Dunn received and read Baig's 1/12/03 letter and its enclosures. Therefore, Dunn and Coca-Cola had actual knowledge of Baig's product, logo and trademark In January 2003.

13.    On or about February 7, 2003, Charles McCoy ("McCoy"), Coca-Cola's then-Vice- President of Supply Chain Network, sent Baig a letter advising Baig that McCoy had reviewed Baig's 1/12/03 letter to Dunn regarding "Naturally Zero."  McCoy wrote that due to "strategic priorities," Coca-Cola allegedly was not interested in pursuing the purchase of Baig's "Naturally Zero" bottled Canadian spring water. A true and correct copy of McCoy's 2/7/03 letter to Baig is attached hereto as Exhibit "E."

14.     On October 20, 2003, unbeknownst to Baig, Coca-Cola filed its application with the United States Patent and Trademark Office ("PTO") to register its claimed trademark, "Sprite Zero," on an intent-to-use basis.  A true and correct copy of said application, Serial Number 78316078, is attached hereto as Exhibit "F". Coca-Cola filed this application with actual knowledge of Baig's "Naturally Zero" trademark, and deliberately and wrongfully copied and misappropriated the dominant and salient feature of Baig's trademark – "Zero" – in formulating its "Sprite Zero" trademark.

15.     On August 31, 2004, Coca-Cola filed an application in the PTO to register the trademark, "Nothing is lighter than Zero,"  with actual knowledge of Baig's trademarks, "A drink about nothing," "There's nothing better than absolutely nothing" and "Could you ask for anything less?". A true and correct copy of Coca-Cola's application, Serial Number 78476290, is attached hereto as Exhibit "G."

16.     In September, 2004, Coca-Cola, with actual knowledge of Baig's "Naturally Zero" trademark, began manufacturing, distributing, advertising, and selling a diet, carbonated soft drink bearing the trademark "Sprite Zero." Photographs of specimens of the original, and current, "Sprite Zero" labels and trademark are attached hereto as Exhibits "H" and "I," respectively.

17.     When Coca-Cola commenced manufacturing, distributing, advertising, and selling "Sprite Zero," it competed directly with Baig's "Naturally Zero" bottled water and indeed was sold side-by-side on retailers' shelves and on the Internet.

18.     Coca-Cola's use of the dominant feature of Baig's trademark - "Zero"- in Coca-Cola's trademark, "Sprite Zero," was and is without the consent or authorization of Baig.

19.     On March 4, 2005, Coca-Cola filed its application in the PTO to register its claimed trademark, "Coca-Cola Zero."  On May 5, 2005, Coca-Cola filed its application in the PTO to register "Fanta Zero." True and correct copies of these applications, Serial Numbers 78580598 and 78620677, are attached hereto, respectively, as Exhibit "J" and "K."

20.     In June 2005, Coca-Cola, with actual knowledge of Baig's "Naturally Zero" trademark, began manufacturing, distributing, advertising, and selling a diet, carbonated soft drink bearing the name and trademark "Coca-Cola Zero." A photograph of a specimen of the "Coca-Cola Zero" label and trademark is attached hereto as Exhibit "L."

21.     On June 28, 2005, Coca-Cola filed its application to register the trademark "Coca-Cola Zero" with the Canadian Intellectual Property Office

("CIPO"). On July 6, 2005, Coca-Cola Company filed its application to register "Coke Zero" with the PTO.

22.     In January, 2007, Coca-Cola began manufacturing, distributing, advertising, and selling a diet, carbonated soft drink bearing the name and trademark "Coca-Cola Cherry Zero," a/k/a "Coke Cherry Zero."  A photograph of a specimen of the "Coca-Cola Cherry Zero" label and trademark is attached hereto as Exhibit "M."   In May, 2007, Coca-Cola filed its applications in the PTO to register "Coca-Cola Cherry Zero" and "Coke Cherry Zero."  True and correct copies of these applications, Serial Numbers 77176279 and 77175066, are attached hereto, respectively, as Exhibits "N" and "O."

23.     In addition and subsequent to its manufacture, marketing, distribution and sale of the foregoing products, Coca-Cola has manufactured, distributed, advertised and sold a host of additional Coca-Cola "Zero" drinks, including "Pibb Zero," "Vault Zero," "Powerade Zero" and others. A photograph of specimens of some of the members of the Coca-Cola Zero family is attached hereto as Exhibit "P."

24.     Since 1998, Baig has sold over $150,000.00 dollars' worth of Canadian bottled spring water under the name and mark "Naturally Zero" throughout the identified market area, and has spent thousands of dollars annually in advertising and promoting the name and mark in that area. At all

relevant times, including at the present, Baig has also promoted "Naturally Zero" on a world-wide basis through his internet web site, www.naturallyzero.com. Therefore, Baig has enforceable common law use rights in the trademark, "Naturally Zero."

## COUNT I

### (TRADEMARK INFRINGEMENT AND FALSE DESIGNATION OF ORIGIN-LANHAM ACT)

25. Baig repeats and re-alleges paragraphs 1 - 24 of the General Allegations as paragraph 25. of Count I, as though same were fully set forth herein.

26. As a result of its unauthorized and illegal use of the mark "Zero" in connection with its manufacture, advertising, and sale of "Sprite Zero", "Coca-Cola Zero," "Coca-Cola Cherry Zero," "Pibb Zero," "Vault Zero," "Powerade Zero" and every other product in Coca-Cola's "Zero Family," Coca-Cola is likely to cause reverse confusion or mistake or to deceive the public, in violation of the Trademark Laws of the United States, 15 U.S.C. § 1125(a).

27. As a result of its unauthorized and illegal use of the mark "Zero" in connection with its manufacture, advertising, and sale of "Sprite Zero", "Coca-Cola Zero," "Coca-Cola Cherry Zero," "Pibb Zero," "Vault Zero," "Powerade Zero" and every other product in Coca-Cola's "Zero Family," Coca-Cola is likely to mislead prospective purchasers as to the affiliation, connection, or association of

Coca-Cola or Coca-Cola's "Zero" products with Baig or Baig's "Naturally Zero" products, or as to the origin, sponsorship or approval of Coca-Cola's "Sprite Zero", "Coca-Cola Zero," "Coca-Cola Cherry Zero," "Pibb Zero," "Vault Zero," "Powerade Zero" and every other product in Coca-Cola's "Zero Family," by Baig, causing purchasers to rely thereon, in violation of the Lanham Act, 15 U.S.C. § 1125(a).

28.     Coca-Cola's acts were undertaken in bad faith and in a deliberate and willful manner to copy and misappropriate and call its own through reverse confusion of Baig and Baig's "Naturally Zero" trademark for Canadian bottled spring water and to mislead the public into believing that there is a connection, affiliation, or association between Coca-Cola or its "Zero"-branded products and Baig or his "Naturally Zero"-branded products.

29.     By reason of Coca-Cola's acts, Baig has suffered and will continue to suffer damage and injury to his business, reputation, and goodwill, and will sustain loss of revenues and profits.

30.     Unless enjoined by this Court, Coca-Cola will continue to perform the acts complained of herein and cause said damages and injury, all to the immediate and irreparable harm of Baig, for which Baig has no adequate remedy at law.

WHEREFORE, Plaintiffs, MIRZA N. BAIG and BLUES SPRINGS WATER CO., pray for a judgment in their favor and against Defendant, THE COCA-COLA COMPANY:

A.     Permanently enjoining and restraining THE COCA-COLA COMPNAY, its officers, agents employees, representatives, and all others acting in concert or participation with any of them from:

> (1)    using the trademarks "Sprite Zero", "Coca-Cola Zero," "Coke Zero," "Fanta Zero," "Pibb Zero," "Vault Zero" or any other beverage using the mark "Zero" or any other colorable imitation of the "Naturally Zero" mark, or any other mark that is confusingly similar to the "Naturally Zero" mark; and
>
> (2)  doing any other act or thing likely to induce the belief that THE COCA-COLA COMPANY'S business or products are in any way connected with BAIG'S business or products, or are sponsored or approved by BAIG.

B.   Directing THE COCA-COLA COMPANY to:

> (1)  account for and pay over to BAIG all profits derived by THE COCA-COLA COMPANY from its acts complained of herein, together with prejudgment interest;
>
> (2)  pay to BAIG all the damages he has suffered as a result of the acts of THE COCA-COLA COMPANY complained of herein, including an assessment of trebled actual damages, together with prejudgment interest;
>
> (3) pay to BAIG his attorneys' fees and costs in this action;
>
> (4) file with this Court and serve on BAIG'S counsel, within fourteen days after entry of an injunction issued by

this Court, a sworn written statement as provided in 15 U.S.C. §1116.

C.    Awarding BAIG and against THE COCA-COLA COMPANY such further relief as this Court deems just, equitable and proper.

## COUNT II

## (TRADEMARK INFRINGEMENT – CANADIAN TRADE-MARKS ACT)

31.    Baig repeats and re-alleges paragraphs 1 - 24 of the General Allegations as paragraph 31. of Count II as though same were fully set forth herein.

32.    On November 19, 1997, Baig filed an application with CIPO to register his "Naturally Zero" trademark and design under the Canadian Trade-marks Act ("Act"), R.S., c. T-10, ss. 1. – 69. A true and correct copy of Baig's application, Application Number 0861998, is attached hereto as Exhibit "Q."

33.    Section 2 of the Act defines the term "use," in relation to a trademark, as "any use that by section 4 is deemed to be a use in association with wares or services…" Section 4(3) of the Act provides:

> "(3) A trade-mark that is marked in Canada on wares or on the packages in which they are contained is, when the wares are exported from Canada, deemed to be used in Canada in association with those wares."

34.    In early 1998, Baig entered into a manufacturing and bottling agreement with Breuvages Drummond Ltée, a Canadian bottling company having its principal place of business in Drummondville, Quebec, to manufacture, bottle and affix the label and trademark to, Baig's "Naturally Zero" Canadian bottled spring water. Breuvages Drummond commenced manufacturing "Naturally Zero" for Baig in the spring of 1998 and for the remainder of the year. Baig exported from Canada all of the "Naturally Zero" bottled water produced by Breuvages Drummond to the United States for sale in the United States.

35.    In 1999, Baig switched bottlers to Echo Springs Corporate Brands, a Canadian bottling company having its principal place of business in Mississauga, Ontario. All of the "Naturally Zero" Canadian bottled spring water Baig sold was manufactured and labeled in Canada and was exported to the United States for sale. "Naturally Zero," therefore, was "used" in Canada under the Act.

36.    On November 20, 2000, Baig's trademark for "Naturally Zero" and design were registered under the Act.    A true and correct copy of Baig's Canadian trademark registration, Registration Number TMA537375, is attached hereto as Exhibit "R." Under the registration, Baig was granted "the right to the exclusive use of …. the word ZERO" in his trademark.

37.     As a result of its unauthorized use of the mark "Zero" in connection with its manufacture, advertising, and sale of "Sprite Zero", "Coca-Cola Zero," "Coca-Cola Cherry Zero," "Pibb Zero," "Vault Zero" and every other product in Coca-Cola's "Zero Family," Coca-Cola is likely to mislead prospective purchasers as to the affiliation, connection, or association of Coca-Cola or Coca-Cola's "Zero" products with Baig or Baig's "Naturally Zero" products, or as to the origin, sponsorship or approval of Coca-Cola's "Sprite Zero", "Coca-Cola Zero," "Coca-Cola Cherry Zero," "Pibb Zero," "Vault Zero" and every other product in Coca-Cola's "Zero Family," by Baig, causing purchasers to rely thereon, in violation of Sections 7 and 8 of the Act

38.     Coca-Cola's acts were undertaken in bad faith and in a deliberate attempt to copy and misappropriate and call its own through reverse confusion of Baig and Baig's "Naturally Zero" trademark for Canadian bottled spring water and to mislead the public into believing that there is a connection, affiliation, or association between Coca-Cola or its "Zero"-branded products and Baig or his "Naturally Zero"-branded products.

39.     By reason of Coca-Cola's acts, Baig has suffered and will continue to suffer damage and injury to his business, reputation, and goodwill, and will sustain loss of revenues and profits.

40.     Unless enjoined by this Court, Coca-Cola will continue to perform the acts complained of herein and cause said damages and injury, all to the immediate and irreparable harm of Baig, for which Baig has no adequate remedy at law.

WHEREFORE, Plaintiffs, MIRZA N. BAIG and BLUES SPRINGS WATER CO., pray for a judgment in their favor and against Defendant, THE COCA-COLA COMPANY:

A.     Permanently enjoining and restraining THE COCA-COLA COMPNAY, its officers, agents employees, representatives, and all others acting in concert or participation with any of them from:

> (1)     using the trademarks "Sprite Zero", "Coca-Cola Zero," "Coke Zero," "Fanta Zero," "Pibb Zero," "Vault Zero" or any other beverage using the mark "Zero" or any other colorable imitation of the "Naturally Zero" mark, or any other mark that is confusingly similar to the "Naturally Zero" mark; and
>
> (2)  doing any other act or thing likely to induce the belief that THE COCA-COLA COMPANY'S business or products are in any way connected with BAIG'S business or products, or are sponsored or approved by BAIG.

B.   Directing THE COCA-COLA COMPANY to:

> (1)  account for and pay over to BAIG all profits derived by THE COCA-COLA COMPANY from its acts complained of herein, together with prejudgment interest;
>
> (2)   pay to BAIG all the damages he has suffered as a result of the acts of THE COCA-COLA COMPANY

complained of herein, including an assessment of trebled actual damages, together with prejudgment interest;

(3) pay to BAIG his attorneys' fees and costs in this action;

(4) file with this Court and serve on BAIG'S counsel, within fourteen days after entry of an injunction issued by this Court, a sworn written statement as provided in 15 U.S.C. §1116.

C. Awarding BAIG and against THE COCA-COLA COMPANY such further relief as this Court deems just, equitable and proper.

Respectfully submitted,

DAVID J. KIESLER & SSOCIATES, LLC

_/s/ David J. Kiesler_
By: David J. Kiesler

David J. Kiesler, Esq.
David J. Kiesler & Associates, LLC
Attorneys for Plaintiffs
161 N. Clark St., Suite 2500
Chicago, IL 60601
(312) 920-6666
(312) 920-6667 Fax
ARDC No. 6193042