IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MIRZA N. BAIG and | ) | |
| BLUE SPRINGS WATER CO., | ) | |
| | ) | |
| Plaintiff, | ) | No. 08 C 4206 |
| v. | ) | |
| | ) | Judge Robert W. Gettleman |
| THE COCA-COLA COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs, Mirza N. Baig ("Baig") and Blue Springs Water Company ("Blue Springs"), filed a three count first amended complaint against defendant, The Coca-Cola Company, alleging trademark infringement and false designation of origin in violation of the Lanham Act, 15 U.S.C. § 1125(a) (Count I) and trademark infringement under the Canadian Trademark Act (Count II). Plaintiffs also seek declaratory judgment for relief from a default judgment of the U.S. District Court for the Northern District of Georgia (Count III). Defendant has moved to dismiss the complaint pursuant to Fed. R. Civ. P. 12. For the reasons discussed below, defendant's motion to dismiss is denied as to Count I and granted as to Counts II and III.

## FACTS

For purposes of a motion to dismiss, the court accepts all well-pleaded allegations as true and draws all reasonable inferences in favor of the plaintiff. Travel Around the World, Inc. v. Kingdom of Saudi Arabia, 73 F.3d 1423, 1428 (7th Cir. 1996). Commencing in early 1998, plaintiffs manufactured, distributed, marketed, and sold a brand of Canadian bottled spring water under the name and mark "Naturally Zero," in the greater Chicagoland area, downstate Illinois,

Southern Wisconsin, Northwestern Indiana, and on the internet. The following year, stories about "Naturally Zero" appeared in several beverage trade journals. Encouraged by this attention, plaintiffs hired a marketing consultant, and in December 2002 the consultant phoned Jeff Dunn ("Dunn"), the then-president of defendant's North American business unit in Atlanta, to pitch the potential sale of the "Naturally Zero" product line to defendant. Allegedly Dunn expressed interest in the proposal, and plaintiffs sent a follow-up letter describing the product line and marketing campaign. A month later, in February 2003, plaintiffs received a letter from one of defendant's vice presidents declining the offer.

On October 20, 2003, defendant filed an application with the United States Patent and Trademark Office ("USPTO") to register the trademark "Sprite Zero" on an intent-to-use basis. In September 2004, defendant began manufacturing, distributing, and selling "Sprite Zero." Baig first learned about "Sprite Zero" when he saw it advertised on a highway billboard. The following month, plaintiffs' representative called defendant's legal department in Atlanta to discuss defendant's alleged infringement of the "Naturally Zero" mark. Baig sent a follow-up letter to defendant on November 12, 2004. Defendant's legal department responded by letter in January 2005 denying any wrong-doing. Plaintiffs claim that they made further attempts to settle their claim with defendants, but their efforts are not described in the amended complaint.

In September 2005, plaintiffs filed a request with the USPTO for an extension of time to oppose defendant's application to register the mark "Nothing is lighter than zero." The USPTO granted a 90-day extension, but plaintiffs did not file an opposition. In November 2007, plaintiffs filed a similar extension request with the USPTO to oppose defendant's application to register "Sprite Zero." Once again, an extension was granted, but plaintiffs did not file an

2

opposition. In March 2008, plaintiffs sent a formal demand letter to defendant detailing their claim and demanding a $100,000,000.00 settlement. In a follow-up letter dated June 5, 2008, counsel for plaintiffs advised defendant that unless an agreement was reached by June 13, 2008, Baig would file suit against defendant in this court.

On June 12, 2008, defendant filed its own complaint against plaintiffs in the U.S. District Court for the Northern District of Georgia in Atlanta (The Coca-Cola Company v. Baig, No. 1:08-cv-2010; the "Georgia Case"), seeking a declaratory judgment that defendant was not liable to plaintiffs for infringement, misappropriation, unfair competition or other violations of plaintiffs' rights, and that any right to the "Naturally Zero" mark that plaintiffs may have had based on past sales had been abandoned. Plaintiffs did not file an appearance in the Georgia Case.

On July 24, 2008, plaintiffs filed the instant suit with this court. The following day, defendant moved for a default judgment in the Georgia Case. The court in the Georgia Case, ruling that it had venue, subject matter jurisdiction, and personal jurisdiction over the defendants, granted a default judgment (on a form order drafted by defendant's counsel), holding that: (1) defendant had not misappropriated plaintiffs' intellectual property or breached any contractual relationship with plaintiffs; (2) any rights plaintiffs might have had to the names "Naturally Zero Canadian Spring Water" and/or "Naturally Zero" had been abandoned; (3) the use by defendant of its trademarks that include "Zero" do not infringe any valid trademark rights of plaintiffs; and (4) the development, adoption, and use by defendant of its trademarks that include "Zero" do not constitute unfair competition with plaintiffs, or otherwise violate any rights of plaintiffs. Moreover, the court granted a permanent injunction enjoining plaintiffs from

asserting against defendant in any forum any claim that defendant has infringed, misappropriated, competed unfairly, or otherwise violated plaintiffs' rights by developing, adopting, or using defendant's trademarks that include "Zero." Subsequently, plaintiffs filed the instant First Amended Complaint on July 31, 2008.

## DISCUSSION

Defendant has brought the instant motion to dismiss arguing that Counts I and II of the amended complaint are barred by res judicata arising from the judgment in favor of defendant and against plaintiffs entered by the court in the Georgia Case. Alternatively defendant argues that Count II should be dismissed for lack of subject matter jurisdiction. Finally, defendant argues that Count III fails because it is an improper attempt to void the default judgement entered in the Georgia Case.

*Standard of Review*

The purpose of a motion to dismiss is to test the sufficiency of the complaint, not to rule on its merits. See Gibson v. City of Chicago, 910 F.2d 1510, 1520 (7th Cir. 1990). In analyzing the motion, the court must accept the well-pleaded allegations as true, and view those allegations in the light most favorable to plaintiff. McMillan v. Collection Professionals, Inc., 455 F.3d 754, 758 (7th Cir. 2006). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of the cause of action will not do . . .." Bell Atlantic Corp. v. Twombly, 550 U.S.

4

544, 127 S.Ct. 1955, 1964-65, 167 L.Ed. 2d 929 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level." Id. at 1965.

Counts I and II of the Amended Complaint seek relief for trademark infringement under U.S. and Canadian law, respectively. Defendant has moved to dismiss, arguing that Counts I and II of the Amended Complaint are barred by res judicata. Under the doctrine of res judicata, or claim preclusion, "final judgment on the merits in a court of competent jurisdiction bars the same parties or their privies from relitigating not only the issues that were in fact raised and decided but also all other issues which could have been raised in the prior action." Lee v. Peoria, 685 F.2d 196, 199 (7th Cir. 1982). For federal res judicata to apply, the moving party must show: (1) final judgment on the merits in an earlier action; (2) identity of claims in both suits; and (3) identity of parties or their privies. Ross ex rel. Ross v. Bd. of Educ. of Tp. High School Dist. 211, 486 F.3d 279, 282 (7th Cir. 2007). The parties do not dispute that the second and third prongs of these requirements are met. Plaintiffs argue that defendant fails to meet the first requirement of res judicata because the court in the Georgia Case lacked personal jurisdiction over plaintiffs, and the default judgment was void in the absence of personal jurisdiction.

Count III of the Amended Complaint seeks a declaratory judgment finding that the default judgment entered by the court in the Georgia Case is void and unenforceable as a result of that court's lack of personal jurisdiction over plaintiffs. Defendant argues that to collaterally attack the default judgement, plaintiffs must bring a motion under Fed. R. Civ. P. Rule 60(b)(4) before the court in the Georgia Case requesting relief from the judgment. Fed. R. Civ. P. 55(c) provides that, "[t]he court may set aside judgment under Rule 60(b)" for certain enumerated reasons, including the ground that the judgment is void. The Seventh Circuit requires Rule 60(b)

motions be presented to the rendering court. Board of Trustees, Sheet Metal Workers' Nat. Pension Fund v. Elite Erectors, Inc., 212 F.3d 1031, 1034 (7th Cir. 2000) (citing Fuhrman v. Livaditis, 611 F.2d 203, 204-05 (7th Cir. 1979)). However, this court is free to disregard the judgment of the court in the Georgia Case without formally annulling it under Rule 60(b)(4), if the rendering court lacked jurisdiction. Elite Erectors, 212 F.3d at 1034.

Therefore, the pivotal issue for ruling on the entire motion to dismiss is whether the Georgia court had personal jurisdiction over plaintiffs in the Georgia Case.

*Personal Jurisdiction*

Under Georgia's long-arm statute, courts are authorized to exercise personal jurisdiction over a nonresident who "[t]ransacts any business within" the state. OCGA § 9-10-91. Additionally, the Georgia Supreme Court has held that the long-arm statute is coextensive with the limits of personal jurisdiction set by the Due Process Clause of the U.S. Constitution. Innovative Clinical & Consulting Services, LLC v. First Nat. Bank of Ames, 279 Ga. 672, 675, 620 S.E. 2d 352, 355 (2005). Therefore, to assess personal jurisdiction under Georgia law, the courts utilize the minimum contacts analysis of the Due Process Clause. Two factors are crucial to this analysis: "(1) whether the non-resident has purposefully established minimum contacts with the forum; and (2) whether the exercise of jurisdiction would offend traditional notions of fair play and substantial justice." Earthlink, Inc. v. Pope, 2006 WL 2583066 at *5 (N.D.Ga. Aug. 31, 2006) (citing International Shoe Co. v. State of Wash., Office of Unemployment Compensation and Placement, 326 U.S. 310 (1945)).

To satisfy minimum contacts for the purposes of specific jurisdiction, the contacts must: "(1) be related to plaintiff's cause of action; (2) involve some act of 'purposeful availment' by

6

the defendant of the privileges of the forum; and (3) be such that the defendant should reasonably anticipate being 'haled to court there.'" Baynes v. George E. Mason Funeral Home, Inc., 2008 WL 5191808, *3 (N.D.Ga. Dec. 10, 2008) (quoting Francosteel Corporation, Unimetal-Normandy. v. M/V Charm, Tiki, Mortensen & Lange, 19 F.3d 624, 626 (11th Cir. 1994)).

In the instant case, plaintiffs argue that initiating contact with and sending business correspondence to defendants do not satisfy minimum contacts for the purpose of establishing personal jurisdiction. The parties do not dispute that Baig has never physically appeared in Georgia, nor have plaintiffs ever advertised or sold Naturally Zero spring water in that state. Plaintiffs' contacts with Georgia set forth in the pleadings are, (1) plaintiffs' agent's initial phone call proposal and follow-up letter to Dunn, and (2) plaintiffs' phone call and letters to defendant's legal department about plaintiffs' claim to the "Zero" trademark. Additionally, defendant raises plaintiffs' Naturally Zero website and their requests for extensions to file objections with the USPTO as further evidence supporting a finding of personal jurisdiction.

The court finds that these contacts are insufficient to satisfy the requirements of the minimum contacts analysis. Although plaintiffs initiated unsolicited communication with defendant in Georgia, defendant did not pursue the proposal and promptly sent a curt rejection note after receiving plaintiffs' follow-up letter. Consequently, plaintiffs did not "create [a] continuing relationship and obligations" with defendant as a result of the initial proposal; instead they merely expressed a desire to do business. See Burger King Corp. v. Rudzewicz, 471 U.S. 462, 480 (1985) (evaluating the natures of the contacts between the parties, the consequences of their actions, and the course of their dealings in evaluating minimum contacts); see also

Francosteel, 19 F.3d at 628; Complete Concepts, Ltd. v. General Handbag Corp., 880 F.2d 382, 389 (11th Cir. 1989); Railcar, Ltd. v. Southern Illinois Railcar Co., 42 F.Supp.2d 1369, 1374 (N.D. Ga. 1999); Allegiant Physicians Servs., Inc. v. Sturdy Mem'l Hosp., 926 F.Supp. 1106, 1116 (N.D. Ga. 1996).

Plaintiffs' subsequent cease and desist letters and settlement demands are likewise insufficient to establish personal jurisdiction. The courts have long recognized strong policy reasons for encouraging parties to settle disputes by letter before initiating litigation. Invoking personal jurisdiction on the basis of such settlement efforts would chill these policy goals. See Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme, 433 F.3d 1199, 1208 (9th Cir. 2006) (citing Red Wing Shoe Co., Inc. v. Hockerson-Halberstadt, Inc., 148 F.3d 1355, 1360-61 (Fed. Cir. 1998) (noting that if a cease and desist letter subjects the rights holder to jurisdiction in the infringing party's forum, the rights holder will be strongly encouraged to file suit in its home forum instead of pursuing informal resolution).

In addition, defendant argues that plaintiffs invoked the benefits and protections of Georgia law by soliciting customers through an internet website, www.naturallyzero.com, that includes an interactive mechanism for residents of all states to purchase plaintiffs' product. Eleventh Circuit law is unsettled on this point, but "other circuits have required that for personal jurisdiction to be based on a website -- even an interactive one -- it must be shown that the owner of the website manifestly intended to target citizens of the forum state." Estate of Fraser v. Smith, 2007 WL 5007084, *8 (S.D.Fla. 2007). The purpose of plaintiffs' website appears to be primarily to promote a partnership between Naturally Zero and the American Kidney Fund. There are no allegations that plaintiffs ever promoted the website within Georgia, or actually

8

sold any product to Georgia residents. Further, the website does not actually include an interactive mechanism for visitors to purchase water. Instead, visitors are provided a link to the website of Clarus Canadian, plaintiffs' bottling company, where one can buy various beverages, including Naturally Zero. From the allegations and evidence available, the court concludes that the website did not manifestly intend to target the citizens of Georgia, and as such does not rise to the level of contact necessary to meet the minimum contacts requirement.

Defendant also argues that personal jurisdiction was proper because plaintiffs intentionally caused injury to defendant's business activities when plaintiffs filed multiple requests with the USPTO for extension of time to oppose defendant's trademark applications. While it is true that plaintiffs were granted the extensions, nonetheless they ultimately failed to file any objection with the USPTO. The ultimate effect of the extensions was arguably negligible, since a trademark applicant need not wait for registration of its mark to launch a product. Therefore, it is unclear how defendant suffered any injury as a result of plaintiffs' extension requests.

Given that plaintiffs had neither a physical nor virtual presence in Georgia, lacked a business relationship with defendant, and had no other dealings with any entity within in the state, the court concludes that plaintiffs should not have reasonably anticipated being haled into court in Georgia arising out of its contact with defendant. Consequently, plaintiffs' connection with Georgia was tenuous and failed to fulfill the requirements of the minimum contacts analysis. As such, the exercise of jurisdiction did not comport with traditional notions of fair play and substantial justice under International Shoe.

The court respectfully concludes that the court in the Georgia Case improperly invoked personal jurisdiction over plaintiffs, and thus will disregard the default judgment entered by that court. Therefore, Counts I and II are not barred by res judicata, and defendant's motion to dismiss on that ground is denied. Although Seventh Circuit law grants this court the authority to disregard the default judgment for lack of personal jurisdiction, it does not allow this court to void the judgment of the court in the Georgia Case. The only relief available to plaintiffs on that matter is to bring a Rule 60(b)(4) motion before that court. Therefore, defendant's motion to dismiss Count III is granted.

*Count II*

Defendant argues that Count II should be dismissed for the independent reason that this court lacks subject matter jurisdiction over a claim for trademark infringement under Canadian law pursuant to Fed. R. Civ. P. 12(b)(1). Plaintiffs have alleged diversity jurisdiction as the basis of this Court's subject matter jurisdiction over Count II. Although the parties dispute whether jurisdiction extends to Count II, the court dismisses Count II on the alternative ground that it fails to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6).

Plaintiffs allege that they have a valid registered trademark to "Naturally Zero" in Canada. Count II seeks enforcement of their Canadian trademark by this court for conduct occurring wholly in the United States. United States trademark law is based on the doctrine of territoriality, which recognizes that "a trademark has a separate legal existence under each country's laws" and is afforded protection by those laws. ITC Ltd. v. Punchgini, Inc., 482 F.3d 135, 155 (2nd Cir. 2007) (quoting Osawa & Co. v. B & H Photo, 589 F.Supp. 1163, 1171-72

10

(S.D.N.Y. 1984)). The federal courts do not "enforce trademark rights that exist only under foreign law." Barcelona.com, Inc. v. Excelentisimo Ayuntamiento de Barcelona, 330 F.3d 617, 628 (4th Cir. 2003). Thus, plaintiffs ownership of the Canadian trademark to "Naturally Zero" does not grant them the exclusive right to use and enforce that trademark in the United States courts. ITC Ltd., 482 F.3d at 155. Plaintiffs must instead protect their mark under U.S. trademark law. Id. Therefore, defendant's motion to dismiss Count II is granted.

## CONCLUSION

For the reasons discussed above, defendant's motion to dismiss is denied as to Count I and granted as to Counts II and III.

**ENTER:** May 27, 2009

_____
**Robert W. Gettleman**
**United States District Judge**